IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

DREAMSTYLE REMODELING,
INC., *et al.*,

    Plaintiffs,

v.                                                     Civ. No. 22-127 KK/JFR

RENEWAL BY ANDERSEN, LLC,
*et al.*,

    Defendants.

**MEMORANDUM OPINION AND ORDER**

THIS MATTER is before the Court on: (1) Defendants' Motion to Dismiss Claims for Declaratory Relief or Stay Pending Arbitration (Doc. 4) ("First Motion to Dismiss or Stay"), filed March 14, 2022; (2) Defendants' Motion to Confirm Arbitration Award (Doc. 5) ("Motion to Confirm"), filed March 14, 2022; and, (3) Defendants' Motion to Dismiss Claims for Declaratory Relief in Amended Complaint or Stay Pending Arbitration (Doc. 26) ("Second Motion to Dismiss or Stay"), filed May 13, 2022. Having reviewed the parties' submissions, the record, and the relevant law, and being otherwise sufficiently advised, the Court FINDS that: (1) Defendants' First Motion to Dismiss or Stay should be DENIED AS MOOT; (2) Defendants' Motion to Confirm should be GRANTED, and the Final Award in the underlying arbitration should be CONFIRMED without a monetary judgment; and, (3) Defendants' Second Motion to Dismiss or Stay should be GRANTED, and proceedings on the declaratory judgment claims in Plaintiffs' amended complaint should be STAYED pending another arbitration.

**I.   Factual Background and Procedural History**

This action concerns an arbitration proceeding that concluded in February 2022. (Doc. 23.) The arbitration arose out of five Retailer Agreements, pursuant to which Plaintiffs sold and

installed window and door products manufactured by Defendants. (Doc. 23-2 at 11.) Plaintiffs—Dreamstyle Remodeling, Inc., Dreamstyle Remodeling LLC, Dreamstyle Remodeling of San Diego, Inc., Dreamstyle Remodeling of California LLC, and Dreamstyle Remodeling of Idaho, LLC—share the same past and present owners.[1] (Doc. 23 at 2-3 ¶¶ 3-5.) Defendant Andersen Corporation is the sole member of Defendant Renewal by Andersen LLC. (*Id.* at 3 ¶ 6.)

In their First Amended Complaint to Confirm Arbitration Award ("FAC"), Plaintiffs allege the following. On November 11, 2020, Plaintiffs initiated an arbitration proceeding against Defendants.[2] (*Id.* at 5 ¶ 17.) Under the parties' Agreement to Arbitrate, the Commercial Arbitration Rules of the American Arbitration Association ("AAA") and the Federal Arbitration Act ("FAA") governed the arbitration. (*Id.* at 5 ¶ 18; *see also* Doc. 23-1 at 2 ¶ 10.) The dispute underlying the arbitration concerned five Retailer Agreements in which Defendants granted Plaintiffs the right to market, sell, and install certain window and door products manufactured by Defendants. (Doc. 23 at 5-6 ¶ 21.) Plaintiffs claimed that Defendants wrongfully terminated the Retailer Agreements, and Defendants counterclaimed that Plaintiffs had breached and were breaching various provisions in them, including a provision requiring Plaintiffs to reimburse Defendants for service and repair work Defendants performed as a result of Plaintiffs' installation of Defendants' products. (*Id.* at 6 ¶¶ 21, 22; *see also* Doc. 27-1 at 2 ¶ 24.)

---

[1] Two of the Plaintiff entities—Dreamstyle Remodeling, Inc. and Dreamstyle Remodeling of San Diego, Inc.—were corporations whose sole shareholder was Larry A. Chavez. (Doc. 23 at 2-3 ¶¶ 3-4.) In November 2021, Dreamstyle Remodeling, Inc. merged into Plaintiff Dreamstyle Remodeling LLC, and Dreamstyle Remodeling of San Diego, Inc.—after having been renamed Dreamstyle Remodeling of California, Inc.—merged into Plaintiff Dreamstyle Remodeling of California LLC. (*Id.*) The sole member of both Dreamstyle Remodeling LLC and Dreamstyle Remodeling of California LLC is HomeRenew Buyer, Inc. (*Id.*) The fifth and final Plaintiff entity is Dreamstyle Remodeling of Idaho, LLC. Its sole member was Mr. Chavez, until November 2021, when its sole member changed to HomeRenew Buyer, Inc. (*Id.* at 3 ¶ 5.)

[2] By stipulation, Plaintiffs' arbitration demand incorporated their complaints in two federal court cases, *i.e.*, *Dreamstyle Remodeling of California, Inc. v. Renewal by Andersen, LLC*, No. 3:19-cv-01324-BEN-BLM (S.D. Cal.), and *Dreamstyle Remodeling, Inc. v. Renewal by Anderson, LLC*, No. 1:19-cv-01086-GBW-JFR (D.N.M.). (Doc 23 at 5 n.1; Doc. 23-3.)

2

The arbitration hearing took place via Zoom videoconferencing from November 8 to November 19, 2021. (Doc. 23 at 6 ¶ 23.) On January 3, 2022, the panel of arbitrators issued an Interim Award, awarding $6,942,226 to Plaintiffs on their wrongful termination claims, and $587,662 to Defendants on their service reimbursement counterclaim. (*Id.* at 6 ¶ 24; Doc. 23-2 at 8-28.) The panel reserved ruling on the allocation of pre- and post-judgment interest, attorney's fees, costs, expenses, and fees paid to the AAA and the panel. (Doc. 23 at 6 ¶ 25.)

On January 28, 2022, Defendants paid Plaintiffs $4,000,000 in partial satisfaction of the Interim Award. (*Id.* at 8 n.7.) The panel declared the arbitration hearing closed on February 8, 2022. (*Id.* at 7 ¶ 26.) However, on February 18, 2022, Defendants demanded additional damages of at least $250,000 pursuant to the Retailer Agreements' service reimbursement provision, and indicated that they intended to file another arbitration seeking the claimed additional damages. (*Id.* at 7 ¶¶ 27, 28; *see also* Doc. 11-3.)

The panel issued its Final Award on February 21, 2022. (Doc. 23 at 7 ¶ 29; Doc. 23-2.) Among other things, the Final Award: (a) incorporated the Interim Award; (b) awarded Plaintiffs $3,123,426 in damages plus interest of $855.73 per day from January 29, 2022 until paid, taking into account the $4,000,000 Defendants had already paid; (c) ruled that the AAA's and the panel's fees, expenses, and costs would be "borne as incurred," and that, except for an award of $44,841 to Plaintiffs for costs associated with an expert witness, each party would bear its own attorney fees and costs; and, (d) denied and dismissed with prejudice all claims and counterclaims made in the arbitration, except as provided in the Interim and Final Awards. (Doc. 23 at 7-9 ¶ 30; Doc. 23-2 at 2-3.)

Plaintiffs filed their original Complaint to Confirm Arbitration Award (Doc. 1) ("Complaint") on February 21, 2022, the same day the panel issued its Final Award. In the

3

Complaint, Plaintiffs prayed for: (a) an order confirming the arbitration award; (b) entry of judgment on the award; (c) judgment in Plaintiffs' favor in the principal sum of $3,168,267 with interest of $855.73 per day from January 29, 2022, until paid; (d) a declaration that Defendants terminated the parties' five Retailer Agreements no later than May 8, 2018; and, (e) a declaration "that all future obligations of the parties, if any, [were] terminated in all respects effective February 21, 2022—the date of the Final Award." (*Id.* at 7-8 ¶¶ A-E.) Plaintiffs attached the following documents to the Complaint: (1) the parties' Agreement to Arbitrate; (2) the panel's Final Award, with the Interim Award attached; (3) Plaintiffs' arbitration demand; and, (4) Defendants' arbitration answer and counterclaim. (*Id.* at 8; Docs. 1-1 to 1-4.)

Defendants filed their First Motion to Dismiss or Stay and their Motion to Confirm on March 14, 2022. (Docs. 4, 5.) In their First Motion to Dismiss or Stay, Defendants ask the Court to either dismiss the declaratory judgment claims in Plaintiffs' Complaint or stay judicial proceedings on these claims pending arbitration. (Doc. 4.) In their Motion to Confirm, Defendants ask the Court to confirm the panel's Final Award without providing for the entry of a monetary judgment. (Doc. 5.) On March 26, 2022, Plaintiffs responded in opposition to both motions, and on April 11, 2022, Defendants replied in support of them. (Docs. 10-12, 19-20.)

Meanwhile, on April 8, 2022, the Court issued an Order to Show Cause directing Plaintiffs to "either (1) file a written response … in which they shall show cause why the Court should not dismiss this matter for lack of subject-matter jurisdiction or (2) file an amended complaint that alleges facts sufficient to sustain subject-matter jurisdiction." (Doc. 18 at 3.) Plaintiffs filed their FAC on April 29, 2022. (Doc. 23.) In compliance with the Court's Order, the FAC includes new allegations regarding the parties' citizenship sufficient to show that the Court has diversity jurisdiction over this action. (*Id.* at 2-4 ¶¶ 3-10.) The FAC also includes new factual allegations

4

unrelated to subject-matter jurisdiction and a new request for declaratory judgment on behalf of Plaintiffs' principals.³ (*Id.* at 7, 9-10 ¶¶ 27, 28, 31-38.) However, the documents attached to the original Complaint are also attached to the FAC and the FAC's Prayer for Relief is identical to the Prayer for Relief in the original Complaint. (Doc. 1 at 7-8; Doc. 23 at 10-11.)

On May 13, 2022, Defendants filed their Second Motion to Dismiss or Stay, in which they ask the Court to either dismiss the declaratory judgment claims in the FAC or stay judicial proceedings on these claims pending arbitration.⁴ (Doc. 26.) In this motion, Defendants incorporate the arguments and authorities in their First Motion to Dismiss or Stay regarding the original Complaint, asserting that they are "equally applicable" to the FAC. (*Id.* at 2.) In addition, Defendants argue that the FAC's request for declaratory judgment on behalf of Plaintiffs' principals is ineffective under Federal Rule of Civil Procedure 15(a). (*Id.*) Plaintiffs responded in opposition to Defendants' Second Motion to Dismiss or Stay on May 25, 2022, and Defendants replied in support of it on June 9, 2022. (Docs. 27, 28.)

## II. Analysis

**A.    Legal Standards**

Because the motions before the Court are based on the pleadings, the Court must accept the well-pleaded factual allegations in Plaintiffs' operative complaint as true. *Riley Mfg. Co., Inc. v. Anchor Glass Container Corp.*, 157 F.3d 775, 779 (10th Cir. 1998). As in the analogous context

---

³ In their response to Defendants' Second Motion to Dismiss or Stay, Plaintiffs initially assert that "[t]he difference" between the original Complaint and the FAC "is the inclusion of the principal business addresses and member domiciles to address the Court's concerns over proper subject-matter jurisdiction." (Doc. 27 at 2.) However, later in the same response, Plaintiffs admit that the FAC also "includes new explanatory language in paragraphs 27, 28, and 31 to 38." (*Id.* at 12-13 n.8.)

⁴ On May 9, 2022, Defendants filed a Notice of Supplemental Authority suggesting that the Court should apply Defendants' First Motion to Dismiss or Stay (Doc. 4) to Plaintiffs' FAC (Doc. 23). (Doc. 25.) The Court need not consider Defendants' Notice of Supplemental Authority because their Second Motion to Dismiss or Stay has rendered it moot.

of a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the Court may consider not only the factual allegations in the complaint, "but also the attached exhibits and documents incorporated into the complaint by reference." *Commonwealth Prop. Advocates, LLC v. Mortg. Elec. Registration Sys., Inc.*, 680 F.3d 1194, 1201 (10th Cir. 2011). Further, although a motion to dismiss should generally be converted to a motion for summary judgment if a party submits, and the Court considers, materials outside the pleadings, such conversion is unnecessary if the complaint refers to the document, the document is central to the plaintiff's claim, and the defendant submits an indisputably authentic copy. *Prager v. LaFaver*, 180 F.3d 1185, 1189 (10th Cir. 1999); *Hill v. Vanderbilt Capital Advisors, LLC*, 834 F. Supp. 2d 1228, 1247 (D.N.M. 2011). Finally, the Court may take judicial notice of appropriate facts and records. *Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006); *Hill*, 834 F. Supp. 2d at 1247.

**B.** **The Court will deny Defendants' First Motion to Dismiss or Stay as moot.**

In their First Motion to Dismiss or Stay, Defendants ask the Court to either dismiss the declaratory judgment claims in Plaintiffs' original Complaint or stay judicial proceedings on these claims pending arbitration. (Doc. 4 at 2, 6.) But after Defendants filed the motion, Plaintiffs filed their FAC. (Doc. 23.) An amended complaint ordinarily supersedes the original complaint and renders it "of no legal effect." *Davis v. TXO Prod. Corp.*, 929 F.2d 1515, 1517 (10th Cir. 1991); *Franklin v. Kansas Dep't of Corr.*, 160 F. App'x 730, 734 (10th Cir. 2005) (citing *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir.1991)).

Because Defendants' First Motion to Dismiss or Stay challenges claims in Plaintiffs' original Complaint, and because the original Complaint has been superseded by the FAC, Defendants' motion is moot and will be denied as such. *See Scott v. Buckner Co.*, 388 F. Supp. 3d 1320, 1324 (D. Colo. 2019) (denying motion to dismiss original complaint as moot because

amended complaint superseded the original); *Robbins v. Dyck O'Neal, Inc.*, No. 18-cv-2623, 2019 WL 3453563, at *1 (D. Kan. July 31, 2019) ("[A]ny motion directed at the original complaint is rendered moot by the filing of an amended complaint."). Nevertheless, the Court will consider the briefing on Defendants' First Motion to Dismiss or Stay in deciding their Second Motion to Dismiss or Stay, because Defendants incorporated the arguments and authorities in the first motion into the second. (*See* Doc. 26 at 2.)

C. **The Court will grant Defendants' Second Motion to Dismiss or Stay and stay proceedings on Plaintiffs' declaratory judgment claims pending arbitration.**

As noted in Section I, *supra*, Plaintiffs assert two claims for declaratory judgment in the FAC. (Doc. 23 at 10 ¶¶ D, E.) Specifically, Plaintiffs ask the Court to declare that: (1) Defendants terminated the five Retailer Agreements between the parties "no later than May 8, 2018, as provided [in] the Interim Award"; and, (2) "all future obligations of the parties" were "terminated in all respects effective February 21, 2022 – the date of the Final Award." (*Id.*) In their Second Motion to Dismiss or Stay, Defendants ask the Court to either dismiss these claims or stay judicial proceedings on them pending arbitration. (Doc. 4 at 3-5; Doc. 26 at 2.) According to Defendants, the Court lacks the power to decide Plaintiffs' declaratory judgment claims because the parties have agreed to arbitrate the arbitrability of these claims. (*Id.*) Defendants also argue that the Court should reject these claims because Plaintiffs requested the same declaratory relief from the panel but did not receive it.[5] (Doc. 4 at 5-6; Doc. 26 at 2.)

---

[5] In its Final Award, the panel did not discuss Plaintiffs' request for declaratory relief, and it denied and dismissed all claims "made in [the] arbitration" except as provided in the award. (Doc. 23-2 at 3.) Thus, if Plaintiffs' request was "made in [the] arbitration," (*id.*), then the panel denied it. The Court does not reach Defendants' argument on this point because, as explained below, an arbitrator must decide the arbitrability of Plaintiffs' declaratory judgment claims. However, the Court notes that the declaratory relief Plaintiffs sought from the panel differs from the relief they seek here. In essence, Plaintiffs asked the panel to find that *Defendants' termination of the Retailer Agreements* terminated all obligations between the parties, but they ask the Court to declare that *the panel's Final Award* did so. (*Compare* Doc. 11-6 at 2 *with* Doc. 23 at 10 ¶¶ D, E.) Moreover, Plaintiffs did not request declaratory relief from the panel until Defendants requested additional damages on their service reimbursement counterclaim, which Defendants did not do until after the panel had issued its Interim Award and closed the arbitration hearing. (Docs. 11-3 to 11-6.)

7

In response, Plaintiffs assert that the Court should not dismiss their declaratory judgment claims because Defendants intend to seek additional service reimbursement damages, but the panel "clearly" intended its award to "forever resolve[]" the issue of service reimbursement. (Doc. 27 at 3-5.) According to Plaintiffs, their declaratory judgment claims are meant "to prevent overtly threatened subsequent litigation[] on subject matter which was already ruled upon" in arbitration because "such future claims … are necessarily precluded." (*Id.*; *see also* Doc. 12 at 7-8 (arguing that res judicata precludes additional litigation on Defendants' entitlement to service reimbursement damages).) Plaintiffs also contend that the declaratory relief they seek is "reflected by the plain text of the arbitration award." (Doc. 27 at 6-9.) Finally, Plaintiffs argue that there is "no reason" to stay this proceeding for another arbitration because the panel already rejected Defendants' request for additional damages pursuant to their service reimbursement counterclaim. (*Id.* at 10-11.)

In their reply, Defendants assert that Plaintiffs seek a "substantive expansion" of the panel's Final Award and reiterate that the Court lacks the power "to order substantive relief in Plaintiffs' favor" because both the arbitrability of the parties' disputes and the disputes themselves must be resolved by arbitration. (Doc. 28 at 2-4.) Defendants add that Plaintiffs' assertion of preclusion defenses is misplaced because Defendants have no pending claims at this juncture, and even if they did, Plaintiffs would have to raise the defenses in arbitration. (*Id.*) Finally, Defendants contend that Plaintiffs' declaratory judgment claims are substantively without merit because the Final Award did not extinguish Plaintiffs' liability for "hypothetical future expenses that had not

---

Also, both sides made their requests informally, via e-mail message. (*Id.*) Thus, and because the panel did not discuss the parties' eleventh-hour requests in its Final Award, it is unclear whether the panel rejected either or both sides' requests on the merits or instead simply declined to entertain them, for example, because they were untimely or improperly made.

8

yet been incurred and which Plaintiffs had not yet refused to reimburse." (*Id.* at 4-5.)

As explained below, the Court finds that under the parties' Agreement to Arbitrate, the arbitrability of Plaintiffs' declaratory judgment claims must be resolved by arbitration. The Court therefore lacks the power to adjudicate the claims at this juncture and will grant Defendants' Second Motion to Dismiss or Stay. The Court further finds that, under the FAA, it should stay judicial proceedings on the claims rather than dismiss them.

The parties' Agreement to Arbitrate provides that the FAA will apply to arbitrations involving the parties' Retailer Agreements.[6] (Doc. 23-1 at 2 ¶ 10.) Under the FAA, a written agreement to arbitrate an existing or future dispute regarding "a transaction involving commerce … shall be valid, irrevocable, and enforceable," unless the agreement is revocable on "such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA requires courts to "place[] arbitration agreements on an equal footing with other contracts, and … enforce them according to their terms," though "[l]ike other contracts … they may be invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability." *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 67–68 (2010) (citations and quotation marks omitted). Thus, a party may apply to a federal court to stay an action on any issue subject to compulsory arbitration.[7] *Id.* at 68 (quoting 9 U.S.C. § 3).

The Supreme Court has held that under the FAA, "parties can agree to arbitrate 'gateway'

---

[6] The Retailer Agreements also provide that the FAA "will apply to any arbitration under" these agreements. (Doc. 27 at 4 n.2; Doc. 27-1 at 3.)

[7] A party may also petition a federal court to compel arbitration, and courts "'shall' order arbitration 'upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue.'" *Rent-A-Ctr., W., Inc.*, 561 U.S. at 68 (quoting 9 U.S.C. § 4). But when "the parties agreed to arbitrate in a particular forum[,] only a district court *in that forum* has authority to compel arbitration under [the FAA]." *Ansari v. Qwest Commc'ns Corp.*, 414 F.3d 1214, 1219–20 (10th Cir. 2005) (emphasis added). And here, the parties agreed that arbitration proceedings "shall be conducted in Minneapolis, Minnesota." (Doc. 23-1 at 1 ¶ 3.) This appears to be why Defendants have not asked the Court to compel Plaintiffs to arbitrate. (*See* Doc. 4-2 at 3.)

questions of 'arbitrability'" such as "whether [the parties'] agreement covers a particular controversy." *Id.* at 68-69. "[W]hen parties agree that an arbitrator should decide arbitrability, they delegate to an arbitrator all threshold questions concerning arbitrability—including whether their agreement covers a particular controversy." *Belnap v. Iasis Healthcare*, 844 F.3d 1272, 1280 (10th Cir. 2017) (quotation marks omitted). Courts cannot find "that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so." *Id.* at 1281 (quotation marks and brackets omitted). But when there is such evidence, "a court possesses no power to decide the arbitrability issue," *Henry Schein, Inc. v. Archer & White Sales, Inc.*, — U.S. —, 139 S. Ct. 524, 529 (2019), and must refrain from adjudicating any such issues "in order to effectuate the parties' intent." *Belnap*, 844 F.3d at 1286. And "[t]hat is true even if the court thinks that the argument that the arbitration agreement applies to a particular dispute is wholly groundless."[8] *Henry Schein, Inc.*, 139 S. Ct. at 529.

Incorporation of the AAA's Commercial Arbitration Rules into an arbitration agreement "constitutes clear and unmistakable evidence of an agreement to arbitrate arbitrability."[9] *Belnap*, 844 F.3d at 1283 (applying "substantively identical" JAMS rule). This is because the AAA's rules "provide[] that arbitrators shall decide all issues of arbitrability." *Dreamstyle Remodeling, Inc. v. Renewal by Andersen, LLC*, No. 19-cv-1086, 2020 WL 2065276, at *4 (D.N.M. Apr. 29, 2020)

---

[8] "To be sure, before referring a dispute to an arbitrator, the court determines whether a valid arbitration agreement exists. But if a valid agreement exists, and if the agreement delegates the arbitrability issue to an arbitrator, a court may not decide the arbitrability issue." *Henry Schein, Inc.*, 139 S. Ct. at 530. Here, the parties do not dispute the existence or validity of their Agreement to Arbitrate.

[9] In *Riley Manufacturing Co., Inc.*, 157 F.3d at 775, the Tenth Circuit found no clear and unmistakable evidence of an agreement to arbitrate arbitrability, even though the arbitration agreement at issue incorporated the AAA's Commercial Arbitration Rules. *Id.* at 777 n.1, 780. But in *Riley*, the earlier "version of the AAA Rules that was incorporated into the agreement did *not* include a provision concerning the arbitration of arbitrability." *Belnap*, 844 F.3d at 1284 (emphasis in original).

("*Dreamstyle Remodeling I*").[10] Specifically, AAA Commercial Arbitration Rule 7 provides that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." AAA Commercial Arbitration Rules and Mediation Procedures, R-7(a) (Oct. 1, 2013); *see also, e.g., Goldgroup Res., Inc. v. DynaResource de Mexico, S.A. de C.V.*, 994 F.3d 1181, 1191 (10th Cir. 2021) ("[W]e have repeatedly held that contracting parties' incorporation of the AAA Rules into their arbitration agreement constitutes clear and unmistakable evidence of an agreement to arbitrate arbitrability.") (quotation marks omitted); *Border Area Mental Health, Inc. v. United Behav. Health, Inc.*, 303 F. Supp. 3d 1154, 1159-60 (D.N.M. 2018) (by incorporating AAA Commercial Arbitration Rules into agreement, parties "clearly and unmistakably agreed to arbitrate arbitrability"); *Waltrip v. Pilot Travel Ctrs.*, No. 21-cv-642, 2022 WL 2192892, at *11 (D.N.M. June 17, 2022) ("Circuit Courts of Appeal unanimously agree that incorporating [AAA] Rules into an agreement is clear and unmistakable evidence of an agreement to arbitrate arbitrability.").

Here, the parties' Agreement to Arbitrate states that arbitration arising out of or relating to the parties' Retailer Agreements "shall be governed by the AAA Commercial Arbitration Rules."[11] (Doc. 23-1 at 2 ¶ 10.) Under Tenth Circuit law, the agreement's incorporation of the AAA Rules clearly and unmistakably shows that the parties have agreed to arbitrate the arbitrability of disputes

---

[10] *Dreamstyle Remodeling I* was entered in a prior lawsuit Plaintiffs filed in this District regarding four of the five Retailer Agreements at issue in the arbitration underlying this action. 2020 WL 2065276 at *1. In that case, the Court found that the Retailer Agreements' incorporation of the AAA's Commercial Arbitration Rules constituted clear and unmistakable evidence of an agreement to arbitrate arbitrability and therefore stayed the lawsuit pending arbitration. *Id.* at *4-*5. The parties later stipulated to the dismissal of *Dreamstyle Remodeling I*, as well as two lawsuits filed in other Districts, in their Agreement to Arbitrate. (Doc. 23-1 at 1 ¶ 1.)

[11] Likewise, the Retailer Agreements provide that arbitration arising out of or relating to the agreements will be conducted "in accordance with the Commercial Arbitration Rules of the [AAA] then in effect." (Doc. 27-1 at 3.)

arising out of or relating to the Retailer Agreements, including Plaintiffs' requests for declaratory relief.[12] *Goldgroup Res., Inc.*, 994 F.3d at 1191; *Belnap*, 844 F.3d at 1283.

There being clear and unmistakable evidence that the parties agreed to arbitrate the arbitrability of Plaintiffs' declaratory judgment claims, the Court has "no power to decide the arbitrability issue," *Henry Schein, Inc.*, 139 S. Ct. at 529, and must refrain from adjudicating arbitrability "to effectuate the parties' intent." *Belnap*, 844 F.3d at 1286. Instead, "all questions of arbitrability … must be resolved by an arbitrator." *Border Area Mental Health, Inc.*, 303 F. Supp. 3d at 1160. This would be so even if Defendants' argument that Plaintiffs' claims must be arbitrated was "wholly groundless," which it is not. *Henry Schein, Inc.*, 139 S. Ct. at 529; *see, e.g., Shell Oil Co. v. CO2 Comm., Inc.*, 589 F.3d 1105, 1109 (10th Cir. 2009) (holding that "the res judicata effect" of a prior arbitration order "is an arbitrable issue" to be decided by an arbitrator rather than the court).

Notably, Plaintiffs do not directly address Defendants' argument that the parties' Agreement to Arbitrate requires them to arbitrate the arbitrability of their declaratory judgment claims. (*See generally* Docs. 10, 27.) Rather, they simply contend that another arbitration is unnecessary because their requests for declaratory relief "are reflected by the plain text of the arbitration award." (Doc. 10 at 2; Doc. 27 at 6.) In support of this position, Plaintiffs cite to *Dodson International Parts, Inc. v. Williams International Co. LLC*, 12 F.4th 1212 (10th Cir. 2021) ("*Dodson*"), claiming that the *Dodson* court looked to "the substantive and functional effect" of an arbitration award to reject an argument "that a confirmation request sought relief beyond the scope" of the award. (Doc. 10 at 7 (citing *Dodson*, 12 F.4th at 1229-30); Doc. 27 at 6-7 (same).)

---

[12] Plaintiffs refrain from arguing that their declaratory judgment claims do not arise out of or relate to the Retailer Agreements, and in any event such an argument would be futile. One of the two declaratory judgment claims expressly refers to the Retailer Agreements, and both claims arise out of the prior arbitration that in turn arose out of the agreements. (Doc. 23 at 10 ¶¶ D, E.)

Plaintiffs' position lacks merit for two reasons. First, although the panel did plainly find that Defendants terminated the parties' Retailer Agreements by May 8, 2018, (Doc. 23-2 at 16, 20), its award includes no plain text that terminates "all future obligations of the parties … effective February 21, 2022." (Doc. 23 at 10 ¶ E; *see generally* Doc. 23-2.) Second, *Dodson* does not empower the Court to decide the arbitrability of Plaintiffs' declaratory judgment claims. The plaintiff in *Dodson* argued that an arbitration award did not give the defendant the right to possess a certain jet engine and that the district court erred in ordering such relief. 12 F.4th at 1229. The Tenth Circuit rejected the plaintiff's argument because "[i]t appear[ed] to say that the district court ordered relief beyond what was ordered by the arbitrator. But the court order says only 'the Award is confirmed.'" *Id.* Then, assuming the plaintiff meant to argue that the arbitrator should not or did not award the defendant the right to possess the engine, the Tenth Circuit rejected those arguments as well, reasoning that "[t]he arbitrator's rejection of [the plaintiff's] conversion claim [wa]s functionally equivalent in this context to granting [the defendant] possession and control of the engine," and that the plaintiff had failed to show the arbitrator erred. *Id.* at 1230.

The *Dodson* decision fails to persuade the Court that it has the power to grant declaratory relief relating to the underlying arbitration at this juncture. Initially, the Tenth Circuit in *Dodson* did not address whether a court may grant declaratory relief based on "the substantive and functional effect" of an arbitration award, (Doc. 10 at 7; Doc. 27 at 7), because the lower court in that case did not grant declaratory relief, and only ordered that "the Award is confirmed." *Dodson*, 12 F.4th at 1229. More particularly, nowhere in *Dodson* did the Tenth Circuit hold that a court has the power to grant declaratory relief based on the effect of a prior arbitration award when the parties have clearly and unmistakably agreed to submit the arbitrability of their disputes to arbitration. *See generally id.* Thus, here, even though the panel found that Defendants terminated

13

the parties' Retailer Agreements by May 8, 2018, and even if the effect of the panel's award was to terminate all future obligations between the parties—a question the Court cannot and does not reach—*Dodson* does not give the Court the power to decide whether Plaintiffs' requests for declaratory relief on these points are arbitrable. *Henry Schein, Inc.*, 139 S. Ct. at 529; *Belnap*, 844 F.3d at 1286. Rather, that power rests solely and squarely with an arbitrator.[13] *Id.*

Plaintiffs also suggest that another arbitration is unnecessary because the panel rejected Defendants' request for additional damages on their service reimbursement counterclaim, thus precluding Defendants from making this request again in a future proceeding. (Doc. 27 at 3-5, 10-11; *see* Doc. 23 at 7 ¶¶ 27-28; *id.* at 9 ¶¶ 32-35.) But again, even if Defendants do bring a claim for additional damages in a future proceeding, and even if the panel's Final Award does preclude it—another question the Court cannot and does not reach[14]—the Court has no power to decide the arbitrability of the claim or Plaintiffs' preclusion defenses, because the parties have clearly and unmistakably agreed to arbitrate the arbitrability of their disputes relating to or arising out of the Retailer Agreements. *Henry Schein, Inc.*, 139 S. Ct. at 529; *Belnap*, 844 F.3d at 1286.

Having determined that it lacks the power to rule on the arbitrability of Plaintiffs' declaratory judgment claims, the Court must decide whether to dismiss these claims or instead stay

---

[13] Moreover, even if the Court did have the power to reach the merits of Plaintiffs' claim seeking a declaration that Defendants terminated the Retailer Agreements by May 8, 2018, by virtue of the panel's finding to that effect, such an exercise of the Court's discretion would be unwarranted, because there is no "live need" for a declaration that merely reiterates the panel's finding. *State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 983–84 (10th Cir. 1994). Nor would the requested declaration prevent Defendants from pursuing additional service reimbursement damages, as is shown by the panel's award of service reimbursement damages notwithstanding its finding that Defendants terminated the Retailer Agreements by May 8, 2018. (*See* Doc. 23-2 at 9, 16, 20.)

[14] As Plaintiffs point out, the panel did not discuss Defendants' request for additional service reimbursement damages in its Final Award. (*See generally* Doc. 23-2.) Thus, and because the panel denied and dismissed all claims "made in [the] arbitration" except as provided in the award, if Defendants' request was "made in [the] arbitration," then the panel denied it. (*Id.*) The Court does not reach Plaintiffs' argument on this point because, again, an arbitrator must decide the arbitrability of Plaintiffs' preclusion defenses. However, again, the Court notes that Defendants did not request additional service reimbursement damages until after the panel had issued its Interim Award and closed the arbitration hearing, and even then they did so only informally. (Doc. 11-3.) As such, it is unclear whether the panel rejected the request on the merits or instead simply declined to entertain it.

judicial proceedings on them pending arbitration. Section 3 of the FAA directs that courts "shall" stay an action "on application of one of the parties" if the action is brought "upon any issue referable to arbitration" under a written agreement. 9 U.S.C. § 3. The Tenth Circuit has therefore held that when a party moves to stay an action pending compulsory arbitration, "[t]he proper course" is "for the district court to grant [the] motion and stay the action pending arbitration." *Adair Bus Sales, Inc. v. Blue Bird Corp.*, 25 F.3d 953, 955 (10th Cir. 1994); *see also Waltrip*, 2022 WL 2192892 at *18 ("Where a party moves for a stay pending the completion of arbitration, the FAA requires the Court to grant it, rather [than] dismiss the party's claims."); *Rager v. Pecos Valley Pizza, Inc.*, No. 18-cv-571, 2019 WL 825736, at *2 (D.N.M. Feb. 21, 2019) ("[W]hen one of the parties petitions the Court to stay an action pending compulsory arbitration, the mandatory language of Section 3 is binding, and it is error for the Court to dismiss the action."). But when the party arguing in favor of arbitration asks the court for dismissal, "and there is no evidence in the record of any party requesting a stay, it is not error for the district court to dismiss the case." *Hunt v. Jack V. Waters, D.C., P.C.*, 403 F. Supp. 3d 1036, 1063 (D.N.M. 2019); *World Fuel Servs., Inc. v. Nambe Pueblo Dev. Corp.*, 362 F. Supp. 3d 1021, 1069 (D.N.M. 2019); *see also Armijo v. Prudential Ins. Co. of Am.*, 72 F.3d 793, 797 (10th Cir. 1995) (finding that district court did not err in failing to stay proceedings where defendant "requested only that the district court dismiss [p]laintiffs' complaints with prejudice" and there was "no evidence in the record of any request for a stay").

Here, Defendants have asked the Court to *either* dismiss Plaintiffs' declaratory judgment claims *or* stay judicial proceedings on them pending arbitration. (Doc. 4; Doc. 26 at 2.) Defendants' position falls somewhere between the defendant's position in *Adair Bus Sales*, 25 F.3d at 954, where the defendant moved only for a stay, and the defendant's position in *Armijo*,

72 F.3d at 797, where the defendant moved only for dismissal. Also, the Court is mindful that a stay of this case could be lengthy, because no arbitration is currently pending and the Court has not been asked to compel either side to commence one. Nevertheless, the requirements of Section 3 have been met: Defendants have applied for a stay and the arbitrability of Plaintiffs' declaratory judgment claims is an issue referable to arbitration under the parties' written agreement. 9 U.S.C. § 3. And Section 3's language is mandatory. *Id.* Thus, the "proper course" is for the Court to stay judicial proceedings on Plaintiffs' declaratory judgment claims pending arbitration. *Adair Bus Sales, Inc.*, 25 F.3d at 955.

As a final point in their Second Motion to Dismiss or Stay, Defendants object to the new claim in the FAC for declaratory judgment on behalf of Plaintiffs' principals, arguing that Plaintiffs added this claim without Defendants' consent or the Court's leave more than 21 days after service of their First Motion to Dismiss or Stay in violation of Federal Rule of Civil Procedure 15. (Doc. 26 at 2; *see* Doc. 23 at 10 ¶ 38.) And indeed, the Court agrees that Plaintiffs added this claim without Defendants' consent or the Court's leave. Defendants' lack of consent is manifest, and the claim exceeds the scope of the leave to amend granted in the Court's Order to Show Cause (Doc. 18) because it does not concern subject-matter jurisdiction.

However, it is less clear that Plaintiffs needed Defendants' consent or the Court's leave to add the new claim. Under Rule 15, a party may amend its pleading once without the opposing party's consent or the Court's leave within 21 days of serving the pleading or, "if the pleading is one to which a responsive pleading is required," within "21 days after service of a responsive pleading or … a motion under Rule 12(b), (e), or (f), whichever is earlier." Fed. R. Civ. P. 15(a). Defendants point out that Plaintiffs added the new claim on behalf of their principals more than 21 days after the filing of Defendants' First Motion to Dismiss or Stay. (Doc. 26 at 2.) But the First

Motion to Dismiss or Stay does not reference Rule 12(b), (e), or (f), (Doc. 4), and neither side has otherwise addressed whether the motion was brought under one of these provisions. As such, and because the new claim does not affect the Court's determination that it lacks the power to decide the arbitrability of Plaintiffs' declaratory judgment claims, the Court will reserve ruling on whether Plaintiffs have effectively asserted the new claim at this time. If the parties return to this Court after another arbitration and the issue becomes pertinent, either side may raise it again in a properly supported motion.

**D.     The Court will grant Defendants' Motion to Confirm and confirm the arbitration award without providing for a monetary judgment.**

In the FAC, Plaintiffs ask the Court to "[i]ssue an order pursuant to 9 U.S.C. § 9 confirming" the panel's Final Award. (Doc. 23 at 10 ¶ A.) Plaintiffs also ask the Court to enter judgment on the award pursuant to 9 U.S.C. § 13 "in the principal sum of $3,168,267 together with interest in the amount of $855.73 per day from … January 29, 2022, until paid." (*Id.* at 10 ¶¶ B, C.) In their Motion to Confirm, Defendants likewise ask the Court to confirm the panel's award, but they argue that it should do so "without the entry of any monetary judgment," because "both parties agree that all monetary liability has been satisfied." (Doc. 5 at 2 (emphasis omitted); *see also* Doc. 4 at 2 n.1.) And indeed, it is undisputed that, by February 25, 2022, Defendants had paid, and Plaintiffs had received, "all monetary amounts owed by [Defendants] to [Plaintiffs] pursuant to the Interim Award … and the Final Award." (Doc. 4-5 at 1; *see also* Doc. 12 at 2.)

Under Section 9 of the FAA, courts "must grant" a request for an order confirming an arbitration award made within a year after the award is entered, "unless the award is vacated, modified, or corrected." 9 U.S.C. § 9; *see also Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 587 (2008) ("There is nothing malleable about 'must grant,' which unequivocally tells courts to grant confirmation in all cases, except when one of the 'prescribed' exceptions applies.").

Section 13 of the FAA, in turn, provides for the entry of judgment on a confirmation order, giving the judgment "the same force and effect" as "a judgment in an action" and making it subject to all legal provisions relating to other judgments. 9 U.S.C. § 13. Generally, a party seeks to confirm an arbitration award "because he fears the [opposing] party will not abide by the award" and a confirmation order makes "a variety of remedies" available to enforce it. *McLaurin v. Terminix Int'l Co., LP*, 13 F.4th 1232, 1238 (11th Cir. 2021).

Here, both sides have asked the Court to confirm the panel's Final Award, and neither side has asked the Court to vacate, modify, or correct it. (Doc. 5 at 2; Doc. 12 at 2; Doc. 23 at 10 ¶ A.) Thus, the Court must confirm the award, 9 U.S.C. § 9, and the only question Defendants' Motion to Confirm presents is whether the Court's confirmation order should provide for the entry of a monetary judgment against Defendants. Defendants argue that it should not, because they have already satisfied the monetary award against them. Plaintiffs counter, without citation to evidence or authority, that Defendants do not want the confirmation order to provide for the entry of a monetary judgment because they "want[] to keep qui[et]" that they were "not successful" in the arbitration. (Doc. 12 at 3.)

Plaintiffs' speculation regarding Defendants' motivation is plainly without foundation. The panel's monetary award has already been described in publicly filed documents including both of Plaintiffs' complaints, the Interim and Final Awards attached to those complaints, and the affidavit Plaintiffs' counsel filed to support Plaintiffs' response to Defendants' First Motion to Dismiss or Stay. (Doc. 1 at 5 ¶ 24, 6 ¶ 28 & n.7; Doc. 1-2; Doc. 11 at 6 ¶ 17 & n.5; Doc. 23 at 6 ¶ 24, 7-8 ¶ 30 & n. 7; Doc. 23-2.) And the proposed confirmation order Defendants attached to their Motion to Confirm actually lists the total amount Defendants paid pursuant to the Final Award. (Doc. 5-1 at 1.) Thus, it would make no sense for Defendants to ask the Court to refrain from providing for

18

the entry of a monetary judgment in order to conceal how much the panel awarded against them.

Defendants, on the other hand, are correct that Plaintiffs have identified no reason why the Court should provide for the entry of a monetary judgment in its confirmation order. There is no dispute that Defendants have already paid Plaintiffs all amounts due under the Final Award. (Doc. 4-5 at 1; Doc. 12 at 2.) Thus, Plaintiffs have no need to enforce the monetary portions of the award. *McLaurin*, 13 F.4th at 1238. Nor have Plaintiffs identified any other reason why they need or are entitled to a monetary judgment. The Court will therefore confirm the panel's Final Award without providing for the entry of a monetary judgment in its confirmation order. In the Court's view, this course of action creates less potential for confusion and is most consistent with the summary nature of proceedings to confirm arbitration awards.[15] *See, e.g., Okla. City Assocs. v. Wal-Mart Stores, Inc.*, 923 F.2d 791, 793 (10th Cir. 1991) (referring to "FAA's summary confirmation process").

### III. Conclusion

For the reasons set forth above, IT IS HEREBY ORDERED as follows:

1. Defendants' Motion to Dismiss Claims for Declaratory Relief or Stay Pending Arbitration (Doc. 4) is DENIED AS MOOT;

2. Defendants' Motion to Confirm Arbitration Award (Doc. 5) is GRANTED, and the Final Award of the Arbitrators entered by arbitrators Michael Dady, Sam Hanson, and Richard B. Solum on February 21, 2022, in AAA Case No. 01-20-0015-6663, is CONFIRMED. No monetary judgment will be entered on this confirmation order because it is undisputed that Defendants have already paid Plaintiffs all amounts due under the Final Award; and,

3. Defendants' Motion to Dismiss Claims for Declaratory Relief in Amended

---

[15] However, the Court will not direct entry of a final judgment at this time because Plaintiffs' declaratory judgment claims, though stayed, will remain pending, and neither side has asked the Court to enter a judgment on Plaintiffs' confirmation claims before the entire case is resolved under Federal Rule of Civil Procedure 54(b).

Complaint or Stay Pending Arbitration (Doc. 26) is GRANTED, and proceedings on Plaintiffs' declaratory judgment claims in this action are STAYED pending the outcome of arbitration on those claims, including whether the claims are arbitrable. The parties shall file a joint status report regarding the filing and progress of such arbitration, if any, **within six (6) months** of entry of this Memorandum Opinion and Order, and every six (6) months thereafter until the Court orders otherwise or the case is closed.

    IT IS SO ORDERED.

_____
KIRTAN KHALSA
UNITED STATES MAGISTRATE JUDGE
Presiding by Consent